UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| INSITU, INC.,<br><br>        Plaintiff,<br><br>  vs.<br><br>MARK KENT,<br><br>        Defendant. | NO.  CV-08-3067-EFS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

    Before the Court, without oral argument, is Plaintiff Insitu's Motion for Summary Judgment.  (Ct. Rec. 8.)  Insitu asserts that the Separation Agreement and Release ("Release") entered into by the parties bars Defendant Mark Kent's counterclaims as a matter of law.  Mr. Kent counters that the factual issues regarding the Release's enforceability remain for trial.  After reviewing the submitted material and applicable authority, the Court is fully informed and, for the reasons set forth below, grants Insitu's motion.

ORDER - 1

A.   **Statement of Facts**[1]

Mr. Kent, an experienced financial consultant, began working for Insitu in June 2007. (Ct. Rec. 35 ¶ 2.) While the employment agreement's precise terms are disputed, the parties agree that as Vice President, Chief Financial Officer, and Treasurer, Mr. Kent was granted an option to purchase a quantity of stock that would vest over a four-year schedule. *Id.* ¶ 4. On March 5, 2008, Insitu terminated Mr. Kent's employment. *Id.* ¶ 6. After Mr. Kent's discharge, the parties, each aided by legal counsel, entered into negotiations to agree on the terms of Mr. Kent's discharge. *Id.* ¶ 9.

During the negotiations, Insitu informed Mr. Kent that, while Insitu had engaged in formal acquisition talks with Boeing, there was virtually no likelihood for there to be an ownership change in the near future. *Id.* ¶¶ 60-62. The financial strain resulting from Mr. Kent's termination forced him to sell his house in Washington in order to move to California, where he believed he would have better access to future employment opportunities. *Id.* ¶ 63. After sharing his financial concerns with Insitu, Insitu offered to help him sell his home, provide him with work opportunities through a consulting agreement, and provide

---

[1] In ruling on a motion for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted declarations, exhibits, and depositions, in the light most favorable to Mr. Kent, the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*). The following factual recitation was created utilizing this standard, along with the parties' Joint Statement of Uncontroverted Facts (Ct. Rec. 35).

ORDER ~ 2

strong references for future employment – all in exchange for Mr. Kent's signature on the Release. *Id.* ¶¶ 52, 64-70.

The parties signed the Release on April 25, 2008. *Id.* ¶ 72. Under the Release, Mr. Kent surrendered his rights to Insitu stock options in exchange for a $115,000.00 severance payment. *Id.* ¶ 74. The Release expressly states that neither party relied on any statements that were not documented in the Release, and that neither party entered into the agreement as a result of duress or coercion from any source.[2] *Id.* ¶ 19. These statements are referred to as the "no-reliance clause."

Insitu did not provide Mr. Kent with consulting service contracts and timely references to prospective future employers. *Id.* ¶ 55. On July 21, 2008, three (3) months after Mr. Kent signed the Release, Boeing and Insitu entered into an agreement under which Insitu became a wholly-owned Boeing subsidiary. *Id.* ¶ 79. As a result, had Mr. Kent retained his stock options, those options, assuming they vested, would have been valued at much more than the severance amount paid to Mr. Kent in accordance with the Release. *Id.* ¶ 81.

Following Boeing's acquisition of Insitu, Mr. Kent tendered the return of the severance payment in exchange for the vacation of the Release as null and void. (Ct. Rec. 29.) Insitu refused and, on

---

[2]The Release states in pertinent part:

12. Employee acknowledges that in executing this Agreement, Employee does not rely upon any representation or statement by any representative of Employer concerning the subject matter of this Agreement, except as expressly set forth in the text of the Agreement.

. . . .

14. Employee . . . now enters into this Agreement without duress or coercion from any source.

ORDER - 3

October 31, 2008, filed this lawsuit for declaratory relief that Mr. Kent cannot rescind the Release and is therefore barred from claiming rights to Insitu stock options. *Id.* Mr. Kent answered, stating that the Release should be declared unenforceable because 1) he was fraudulently induced with false misrepresentations and promises by Insitu, 2) promisory estoppel bars enforcement of the Release, and 3) he was under duress at the time he signed the release. *Id.* Further, Mr. Kent filed a counterclaim for declaratory relief stating that the Release is void and unenforceable because of fraudulent misrepresentation, promissory estoppel, and duress, and declaring his entitlement to immediate vesting of all granted stock options. *Id.* Insitu now asks the Court to dismiss Mr. Kent's counterclaims. (Ct. Rec. 8.)

**B.   Standard**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322.  "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical

ORDER ~ 4

doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**C.    Authority and Analysis**

Insitu asks the Court to dismiss Mr. Kent's promissory estoppel, duress, and fraudulent misrepresentation counterclaims based on the Release's no-reliance clause. Mr. Kent counters that, under the circumstances, a jury should consider the merits of these counterclaims.

Washington courts follow the objective manifestation theory of contracts. *Paradiso v. Drake*, 135 Wn. App. 329, 336 (2006) (noting that courts look for the parties' intent by its objective manifestations rather than the parties' unexpressed subjective intent). Further, when construing a written instrument, Washington courts favor the construction that "gives effect to all provisions of the instrument as against one which renders some of them meaningless or ineffective."

ORDER ~ 5

*Wenatchee Prod. Credit Ass'n v. Pac. Fruit & Produce Co.*, 199 Wn. 651, 658 (1939). With these principles in mind, the Court considers Mr. Kent's counterclaims.

1. <u>Fraudulent Misrepresentations</u>

Mr. Kent claims that the Release should be declared void because it was induced by Insitu's fraudulent misrepresentations. Insitu asserts that any fraud claims are barred by the Release's no-reliance clause.

"[A] release is voidable if induced by fraud, misrepresentation or overreaching or if there is clear and convincing evidence of mutual mistake." *Nation-wide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 187 (1992). Nine (9) elements must be proven in order to establish fraud: 1) representation of an existing fact; 2) its materiality; 3) its falsity; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) the speaker's intent that it should be acted on by the person to whom it is made; 6) ignorance of its falsity on the part of the person to whom it is made; 7) the person's reliance on the truth of the representation; 8) the person's right to rely upon it; and 9) the person's consequent damage. *Sigman v. Stevens-Norton, Inc.*, 70 Wn.2d 915, 920 (1967). At issue are the reliance elements given that the Release contains a clause stating that neither party relied on any statements not documented in the Release. Because reliance is an element of fraud, the no-reliance clause, if upheld, precludes any claim of fraud.

The Washington Supreme Court has not ruled on whether no-reliance clauses bar fraud and promissory estoppel claims. Therefore, the Court is obligated to follow the decisions of the Washington intermediate appellate courts. *See Nelson v. City of Irvine*, 143 F.3d 1196, 1206

ORDER ~ 6

(9th Cir. 1998). Washington appellate courts offer ample guidance.[3] In *Helenius v. Chelius*, 131 Wn. App. 421 (2005), the Washington Court of Appeals emphasized the lack of any "reliance" language before finding that a fraud claim was not barred. Later, in *Kwiatkowski v. Drews*, 142 Wn. App. 463 (2008), the court held that no-reliance clauses bar fraud, misrepresentation, and equitable estoppel claims because they eliminate any reasonable reliance on external promises.

Here, like *Kwiatkowski*, two sophisticated parties, each represented by counsel, were involved in an inherently adversarial settlement agreement. Mr. Kent is an educated business man who served as Insitu's Vice President, Chief Financial Officer, and Treasurer. His attorney was actively involved in negotiating the Release terms and obtained revisions to its terms favorable to Mr. Kent before it was executed. Mr. Kent was also given twenty-one (21) days to consider whether to sign the release and seven (7) days to revoke his acceptance after signing. After careful scrutiny, Mr. Kent knowingly agreed that he had not relied on any promises or agreements not contained in the Release. Accordingly, the Court finds as a matter of law, that Mr. Kent cannot prove reliance given the Release's no-reliance clause. Therefore, the fraudulent misrepresentation claim is dismissed.

---

[3]*See Kwiatkowski v. Drews*, 142 Wn. App. 463 (2008) (finding that plaintiff's fraud, misrepresentation, and equitable estoppel arguments had no merit because they were precluded by a no-reliance clause in the contract); *Helenius v. Chelius*, 131 Wn. App. 421 (2005) (emphasizing the absence of any "reliance" language in the integration clause before finding that a fraud claim was not barred).

ORDER ~ 7

2. <u>Promissory Estoppel</u>

Mr. Kent also counterclaims that the Release is unenforceable under the doctrine of promissory estoppel because he was induced to sign by Insitu's broken promises. Insitu contends that Mr. Kent's promissory estoppel claim is also barred by the no-reliance clause in the Release.

A promise is enforceable under the doctrine of promissory estoppel when a party can establish: 1) a promise which 2) the promisor would reasonably expect to cause the promisee to change his position and 3) which does cause the promisee to change his position 4) justifiably relying upon the promise in such a manner that 5) injustice can be avoided only by enforcement of the promise. *Jones v. Best*, 134 Wn.2d 232, 239 (1998).

Again, the main issue is whether Mr. Kent justifiably relied on Insitu's alleged promises. As stated above, the no-reliance clause eliminates any justifiable reliance on a promise that was not contained within the contract. The release did not contain a promise that Insitu would provide Mr. Kent with consulting service contracts and timely references to prospective future employers. Given the sophisticated nature of the parties and Mr. Kent's ability to negotiate the contract, such alleged promises could have been included. They were not; what was included was the no-reliance clause. Accordingly, Mr. Kent's promissory estoppel counterclaim is dismissed.

3. <u>Duress</u>

Mr. Kent claims that the Release is unenforceable because he signed it under duress caused by the potential harm to his professional reputation and financial strains associated with prematurely losing his job. Insitu states that Mr. Kent cannot and has not proved he was under

ORDER ~ 8

any duress.

Mr. Kent arguably had one or more causes of action against Insitu. Rather than litigate those claims, Mr. Kent hired an attorney, negotiated a settlement agreement and received the benefits due under that agreement. In his counterclaims seeking to void that settlement agreement, with his former employer, he now claims that his job loss, combined with difficulties in selling his Washington house and being shunned by the small community in which Insitu is located, caused him personal and financial duress. (Ct. Rec. 30: Kent Decl. ¶¶ 13-15.) In a contract case where one party seeks avoidance of the contract because of duress, and some other party files a motion for summary judgment on that duress claim, the non-moving party then has the burden of producing admissible evidence which by itself or together with reasonable inferences therefrom creates a genuine issue of material fact that the non-moving party was under the kind of duress that voids the contract. *See Celotex Corp.,* 477 U.S. at 322 (discussing, generally, the burden that must be met to survive a motion for summary judgment). In Washington, the standard for duress sufficient to void a contract is greater than reluctance, financial embarrassment, or pecuniary necessity; rather, the party asserting duress must have been deprived of free will in signing the contract. *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket*, 96 Wn.2d 939, 944-45 (1982).[4]

---

[4]An example of duress is "The Godfather" negotiation from the classic film of the same name. "My father made him an offer he couldn't refuse . . . Luca Brasi held a gun to his head, and my father assured him that either his brains or his signature would be on the contract."

ORDER ~ 9

Here, the asserted duress is of the type that inheres in typical disputes between a terminated employee and the former employer in a relatively small town where the company is a major employer. Plaintiff has failed to produce admissible evidence which together with reasonable inferences therefrom creates a genuine issue of material fact that Defendant applied duress that deprived Plaintiff of his free will in executing this settlement agreement.  Accordingly, Plaintiff has not met his *Celotex* burden.

**D.  Conclusion**

Because Mr. Kent was unable to demonstrate as a matter of law that the Release was invalid or void due to fraud, promissory estoppel, or duress, the Release is enforceable.

For the reasons given above, **IT IS ORDERED**: Plaintiff's Motion for Summary Judgment **(Ct. Rec. 8)** is **GRANTED**; Defendant's counterclaims are dismissed.

///

///

---

THE GODFATHER (Paramount Pictures 1972).  Undoubtedly, before it was memorialized in "The Godfather", the technique had been utilized just often enough to become a figure of speech, hence the colloquial figurative explanation, "What could I do? He had a gun to my head." This is included as only one extreme example of duress sufficient to void a contract. There are surely other forms of duress which would deprive one of free will.

ORDER ~ 10

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and distribute copies to counsel.

**DATED** this ___17th___ day of June 2009.

                                S/ Edward F. Shea
                                  EDWARD F. SHEA
                        UNITED STATES DISTRICT JUDGE

Q:\Civil\2008\08cv3067efs.MSJ.wpd

ORDER - 11